**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Please Touch Museum, | : | Case No. 15-16558 (JKF) |
| | : | |
| Debtor. | : | |

**MOTION OF DEBTOR PLEASE TOUCH MUSEUM**
**FOR ORDER AUTHORIZING USE OF CASH COLLATERAL**

Please Touch Museum, debtor and debtor-in-possession (the "Museum" or the "Debtor"), by and through its undersigned counsel, hereby moves (this "Motion") this Court for entry of an interim order substantially in the form attached hereto (the "Interim Order") pursuant to 11 U.S.C. §§ 105, 361, and 363 and Fed. R. Bankr. P. 4001 and 9014, authorizing the Debtor to use the cash collateral of the existing secured lender and granting adequate protection to the existing secured lender for the use of its cash collateral. In support of this Motion, the Debtor respectfully represents as follows:

**Bankruptcy Rule 4001 and Local Rule 1002-4 Concise Statement**

1. The provisions described in Bankruptcy Rule 4001(b)(1)(B)(i)-(iv) are set forth at the following sections of the Interim Order:

    (a) Name of each entity with an interest in cash collateral. [Interim Order at ¶ K].

    (b) Purposes for the use of cash collateral. [Interim Order at ¶¶ L, 4].

    (c) Material terms and duration of use of cash collateral. [Interim Order at ¶¶ 4-6].

    (d) Liens, cash payments or other adequate protection to be provided to each entity with interest in cash collateral. [Interim Order at ¶¶ 7-11].

2. None of the provisions described in Local Rule 1002-4(1)-(13) are included in the proposed Interim Order.

### Jurisdiction

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

4. The Museum is a Pennsylvania non-profit corporation that operates a children's museum located at Memorial Hall in the Fairmount Park section of Philadelphia.

5. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief with the Court under chapter 11 of title 11 of the Bankruptcy Code. The Debtor is operating its organization and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case (the "Chapter 11 Case") and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

6. The factual background relating to the Debtor's commencement of this Chapter 11 Case is set forth in detail in the *Declaration of Lynn McMaster In Support of First Day Motions* (the "First Day Declaration") filed contemporaneously herewith and incorporated herein by reference.

7. The Debtor intends to restructure its debt through this Chapter 11 Case. The Debtor generates its revenues through a combination of sales of memberships and tickets to the Museum, event revenue, endowment income, and charitable contributions.

8. Operationally, the Debtor generates sufficient revenues from memberships, individual tickets, and other sales and services to cover only some of its expenses. Though the

Museum has demonstrated that it can reliably generate approximately 85% of its operating budget from earned revenue, it relies heavily on contributed revenue as well.

9. While contributed revenues – particularly those from individual donors – vary from year to year, contributions to the Museum have declined considerably in recent years as compared with the period immediately following the Museum's relocation to Memorial Hall.

10. Because the Debtor may occasionally face operating deficits, it maintains a "Museum Fund," which is a brokerage account containing unrestricted funds that can be and are used to fund revenue shortfalls as necessary. As of the Petition Date, the Museum Fund contained approximately $2.2 million.

## Pre-Petition Secured Debt

11. Pursuant to a Trust Indenture dated as of November 1, 2006 between the Philadelphia Authority for Industrial Development (the "Authority") and U.S. Bank, National Association, as trustee (the "Indenture Trustee"), the Authority issued Revenue Bonds in the aggregate principal amount of $60,000,000 (the "Bonds") to provide funding to the Museum.

12. Pursuant to a Loan Agreement also dated as of November 1, 2006, between the Authority and the Museum (the "Loan Agreement"), the proceeds of the Bonds were loaned to the Museum in order to finance the costs of construction, renovation, and improvements to Memorial Hall, fund certain reserves, and fund interest and certain costs associated with the Bonds. In connection with the Loan Agreement, on or about November 8, 2006, the Museum executed a Promissory Note (the "Note") in the principal amount of $60,000,000 in favor of the Authority, which Note the Authority assigned to the Indenture Trustee, for the benefit of bondholders, as security for payment of the Bonds issued pursuant to the Trust Indenture. Additionally, pursuant to a Security Agreement dated November 1, 2006, between the Museum

and the Indenture Trustee (the "<u>Security Agreement</u>"), the Museum granted security interests in certain collateral to the Indenture Trustee.

13. Under the Loan Agreement, among other things, the Museum pledged an interest in "(i) its Gross Receipts and any rights to receive such Gross Receipts and (ii) the Pledged Collateral." Loan Agreement at § 4.5. The Loan Agreement defines Pledged Collateral as the "collateral pledged under the Mortgage [on the Museum's former premises] and the Security Agreement." Loan Agreement at p. 6. The Loan Agreement defines "Gross Receipts" as:

> all realized receipts, revenues, payments, income and other moneys received by or on behalf of the Museum from any source, in connection with the ownership or the operation of all or any part of the Facilities or from income on investments, including, without limitation, all non-operating revenues, and all rights to receive the same whether in the form of Accounts Receivable, contract rights, chattel paper, instruments, general intangibles of the Museum and the proceeds thereof, the proceeds of any insurance coverages on and condemnation awards in respect of the Facilities or any gain on the sale or other disposition of property; all of the foregoing, whether now existing or hereafter coming into existence and whether now owned or held or hereafter acquired by the Museum; and including all gifts, grants, bequests, donations and contributions, except those heretofore or hereafter made, designated at the time of making by the donor or maker as being for certain specified purposes inconsistent with the application thereof to the payments due from the Museum under this Agreement and except any income derived therefrom to the extent required by such designation or restriction.

Loan Agreement at p. 4.

14. Pursuant to the Trust Indenture, Loan Agreement, Note, and Security Agreement (collectively, the "<u>Bond Documents</u>") and upon information and belief, the Indenture Trustee asserts security interests in and/or liens upon the Debtor's Gross Receipts and substantially all of

4

the Debtor's furnishings, equipment, and exhibits, with the exception of certain identified items and exhibits loaned to the Museum or those accessioned into the Museum's collection.[1]

15.  As of July 31, 2015, the Museum was obligated under the Bonds and Bond Documents as follows:

    (a)    Unpaid principal on the Bonds in the amount of $57,890,000; and

    (b)    Accrued but unpaid interest on the Bonds in the amount of $2,960,025.

## Relief Requested

16.  By this Motion, the Debtor hereby requests that this Court authorize and approve the use of cash collateral for the payment of its operating expenses as set forth in the budget attached hereto (the "Initial Budget").

17.  Specifically, the Debtor seeks entry of an Interim Order, pursuant to sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rule 1002-4

    (a)    authorizing the Debtor, pursuant to section 363(c) of the Bankruptcy Code, to use cash collateral consisting of its pre-petition accounts receivable and pre-petition gross receipts resulting from the Debtor's ordinary course business operations as they are collected and, if and as necessary, to draw on the Museum Fund, in order to fund ongoing operations in accordance with the Initial Budget; and

    (b)    authorizing the Debtor, pursuant to sections 361 and 363 of the Bankruptcy Code, to provide adequate protection to the Indenture Trustee in the form of replacement liens in the Debtor's post-petition accounts receivable and post-petition gross receipts resulting from the Debtor's ordinary course business operations to the extent of any diminution in their value derived from the Debtor's use thereof, and to provide such other adequate protection as described herein.

---

[1] Nothing herein shall constitute any admission or consent with respect to the validity, priority, extent or enforceability of the liens asserted by the Indenture Trustee, and the Debtor hereby reserves all rights with respect thereto.

118336052_7

18. In order to effectuate its reorganization and maximize the recovery to creditors, including the Indenture Trustee, the Museum must be permitted to use cash collateral in its ordinary business operations. Indeed, access to the use of pre-petition cash collateral in the form of pre-petition accounts receivable and pre-petition gross receipts is essential to ensure that the Debtor can fund its immediate post-petition operating requirements and other financial obligations.

19. The Debtor believes that the expenses reflected on the Initial Budget represent the minimum reasonable and necessary business expenses that must be paid in order for the Museum to remain in operation and continue serving its important community function. Absent the immediate and continued funding of these essential operating and administrative costs, the Debtor would suffer irreparable harm at the very outset of this case.

20. Without approval of the use of cash collateral, the Debtor will not be able to continue operating, will not be able to undertake the aggressive fundraising campaign that it will need to operate through this restructuring, and will instead be forced to wind down its operations rather than resuscitate them. Uninterrupted access to working capital is critical to maintain the Museum's employee workforce, infrastructure, status as a community treasure and cultural resource, and the preservation of estate assets for the benefit of all creditors and parties in interest.

### Basis for Relief

**A.     The Debtor has an immediate need for the use of cash collateral.**

21. The early days of this bankruptcy proceeding will be critical for the Debtor, which will heavily depend on the patrons who visit the Museum and the donors who support its mission during the chapter 11 process. Yet, to continue encouraging attendance, donations, and essential community support, the Debtor must have immediate access to cash in the form of its accounts

6

receivable and gross receipts resulting from ordinary course operations so that it can *continue* to operate in the ordinary course, generate ongoing revenues, and work to attract philanthropic support or partners.

22. Accordingly, the Debtor hereby seeks to use cash collateral existing on or after the Petition Date that may be subject to the Indenture Trustee's liens. As of the Petition Date, the Debtor does not have sufficient unencumbered cash to fund its business operations and pay present operating expenses.

23. Absent the ability to use cash collateral, the Debtor will not be able to pay critical operating expenses such as insurance, wages, and utilities. If the Debtor cannot meet these expenses, it will likely be forced to cease operations, to the detriment of all stakeholders and the community at large. Such harm to the Debtor's business and reputation will be immediate and irreparable, thwarting the protections and solutions offered by the Bankruptcy Code that underlie the Debtor's difficult decision to seek relief through Chapter 11.

24. The Debtor has formulated the Initial Budget for the use of cash collateral from the Petition Date through ninety (90) days hereafter. The Debtor believes that the Initial Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the ordinary course in connection with the Museum's operations and restructuring efforts for the Initial Budget period. The Debtor also believes that the use of cash collateral in accordance with the Initial Budget will provide the Debtor with adequate liquidity to pay administrative expenses as they become due and payable. Finally, the Debtor anticipates that the Interim Budget appropriately accounts for the increase in contributed revenues expected to result from the launch of a "Save the Museum" fundraising campaign and other restructuring-related development efforts.

**B.    The interests of the Indenture Trustee are adequately protected.**

25.    The Bankruptcy Code provides that a debtor may use cash collateral only if each entity having an interest in the cash collateral consents, or the court authorizes such use after notice and a hearing. 11 U.S.C. § 363(c)(2). On the request of an entity having an interest in the cash collateral, the court must prohibit or condition its use "as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

26.    Appropriate adequate protection is decided on a case-by-case basis. *See, e.g., In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *In re Beker Indus. Corp.*, 58 B.R. 725 (Bankr. S.D.N.Y. 1986); *see also In re JKJ Chevrolet, Inc.*, 190 B.R. 542, 545 (Bankr. E.D. Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case) (citing *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987)). A debtor should be afforded maximum flexibility in structuring its adequate protection proposal. *See In re O'Connor*, 808 F.2d at 1396.

27.    Section 361 of the Bankruptcy Code provides a non-exclusive list of means by which a debtor may provide an entity with adequate protection of its interest in cash collateral:

> (1)    requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2)    providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3)    granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

28. The focus of the adequate protection requirement is to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use, not to compensate the creditor for the delay imposed by the bankruptcy on its ability to pursue non-bankruptcy remedies against the property. *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988); *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. at 736; *see also In re Nice*, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of collateral").

29. The Indenture Trustee is adequately protected by the granting of replacement liens, supplemental liens on unrestricted post-petition contributions, and the continuation of the Debtor's operation.

*Replacement Liens*

30. Here, as the pre-petition accounts receivable and gross receipts generated from the Debtor's ordinary course business operations are turned into cash, the Debtor proposes to use such cash proceeds of the pre-petition accounts receivable and pre-petition gross receipts resulting from ordinary course business operations to continue to operate its businesses. The cash collateral will be used to the extent necessary and in the ordinary course to fund the ongoing costs of the Debtor's operation. To the extent of such usage of pre-petition accounts receivable and pre-petition gross receipts, the Debtor shall grant the Indenture Trustee a replacement lien on new, post-petition accounts receivable and post-petition gross receipts resulting from the Debtor's ordinary course business operations (the "Replacement Liens"), which Replacement

9

Liens shall not attach to post-petition gifts, donations, or contributions that are restricted for a particular purpose.

31. With narrow exception and regardless of the recitation or characterization of items in security instruments, section 552 of the Bankruptcy Code provides in relevant part that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a). The purpose of section 552 is to permit a debtor "to gather into the estate as much money as possible to satisfy the claims of all creditors." *In re Bering Trader, Inc.*, 944 F.2d 500, 502 (9th Cir. 1991).

32. Accordingly, the Indenture Trustee's pre-petition liens on accounts receivable and gross receipts resulting from the Debtor's ordinary course operations do not extend to accounts receivable and receipts generated post-petition or resulting from the Debtor's operations in chapter 11. As such, because the Debtor's post-petition accounts receivable and gross receipts resulting from operations are unencumbered, the Debtor submits that the proposed Replacement Liens adequately protect the Indenture Trustee's interests from potential depreciation or deterioration, and are fair and reasonable.

*Supplemental Liens*

33. To the extent that the Debtor requires the use of cash collateral from the Museum Fund to bridge operating deficits, the Debtor will grant to the Indenture Trustee, as additional adequate protection, a valid, perfected, and enforceable supplemental lien and security interest, to the extent of any diminution in the Museum Fund, in unrestricted post-petition contributions to the Museum (the "<u>Supplemental Liens</u>").

118336052_7

34. The Debtor anticipates that unrestricted contributions to the Museum will increase in the early days of this Chapter 11 Case.

35. The Supplemental Liens in such unrestricted contributions should more than adequately protect the Indenture Trustee's against any diminution in the value of its interests in the Museum Fund as a result of the Debtor's use of cash collateral therefrom.

*Ongoing Operations*

36. In addition to the Replacement Liens and Supplemental Liens, the Indenture Trustee is adequately protected as a result of the Debtor's continued operations. Indeed, without the use of cash collateral, the Debtor would not be able to meet operating expenses, would have to forego business opportunities, and would likely end up in a liquidation. In such a scenario, all assets pledged to the Indenture Trustee would be worth considerably less than if the Museum remains a going concern.

37. The Museum has worked hard to streamline operations, maximize efficiencies, and maintain its commitment to its mission and the Philadelphia community. It is confident that it can muster sufficient philanthropic support to see it through its reorganization, but it must be able to operate uninterrupted and at its customary high-caliber level in order to realize its lofty fundraising objectives. Permitting the Museum the use of cash collateral to remain in operation provides the Indenture Trustee the best opportunity to receive the greatest recovery on account of its claims.

38. Accordingly, the Debtor submits that the use of cash collateral will allow it to seamlessly continue operations and, in doing so, best protect the Indenture Trustee's interests. Such protection is sufficiently adequate for the Indenture Trustee. *See, e.g., In re 499 W. Warren Street Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's

interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditor's secured position would be enhanced by the continued operation of the debtor's business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

39. The Debtor submits that the measures described herein constitute adequate protection pursuant to section 361 of the Bankruptcy Code sufficient to protect the Indenture Trustee against any diminution in the value of any interest it has in cash collateral. The Indenture Trustee will be protected by Replacement Liens to the extent of any diminution in its interest in the Debtor's receivables and gross receipts, Supplemental Liens to the extent of any diminution of its interest in the Museum Fund, and by the fact that the Museum's operations, if allowed to continue uninterrupted, will regenerate the revenue that funds those operations and provide a platform to increase visibility and donor support.

40. For all the reasons set forth above, permitting the Museum to utilize cash collateral as set forth in this Motion will only redound to the Indenture Trustee's benefit and that of the community at large.

### Notice

41. The Debtor has provided notice of this Motion to: (a) the United States Trustee for the Eastern District of Pennsylvania; (b) the Commonwealth of Pennsylvania – Department of Labor and Industry; (c) the Commonwealth of Pennsylvania – Department of Revenue; (d) the

118336052_7

Commonwealth of Pennsylvania – Office of the Attorney General; (e) the Internal Revenue Service; (f) counsel for the Indenture Trustee; (g) the banks at which the Debtor maintains accounts; (h) the City of Philadelphia; and (i) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), via electronic or overnight mail, as appropriate.  In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

    **WHEREFORE,** the Debtor requests that this Court enter an order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing it to use cash collateral for its general ongoing business operations as described in this Motion and the Initial Budget attached hereto; scheduling a further hearing regarding entry of a Final Order authorizing the use of cash collateral; and granting the Debtor such other relief as may be proper and just.

Dated: September 11, 2015                      **DILWORTH PAXSON LLP**

                                                          By: /s/ Lawrence G. McMichael
                                                          Lawrence G. McMichael
                                                          Peter C. Hughes
                                                          Catherine G. Pappas
                                                          1500 Market Street, Suite 3500E
                                                          Philadelphia, PA 19102
                                                          Telephone: (215) 575-7000
                                                          Facsimile: (215) 575-7200

                                                          *Proposed Counsel for the Debtor*

118336052_7