UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Please Touch Museum, | ) Case No. 15-16558 (JKF) |
| | ) |
| Debtor. | ) |
| | ) |

**SECOND INTERIM ORDER (A) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION FOR USE AND (B) PRESCRIBING THE FORM AND MANNER OF NOTICE AND SETTING THE TIME FOR THE FINAL HEARING**

Upon the motion (the "Motion") of the above-captioned debtor (the "Debtor" or "Museum") for interim and final orders pursuant to 11 U.S.C. §§ 105, 361 and 363 and Fed. R. Bankr. P. 4001 and 9014, (a) authorizing the Debtor to use the cash collateral of existing secured lenders and granting adequate protection to U.S. Bank, National Association as Trustee under the Indenture (the "Indenture Trustee"), the existing secured lender, for the use of its cash collateral and (b) prescribing the form and manner of notice and setting the time for the final hearing (the "Final Hearing") on the Motion. Upon review of the Motion and the First Day Declaration[1] and based upon the evidence presented to this Court at the interim hearing (the "Interim Hearing"), the Court hereby makes the following findings of fact and conclusions of law:

A. Adequate and sufficient notice of the Motion and the Interim Hearing has been provided to all persons entitled thereto pursuant to Rules 2002 and 4001 of the Bankruptcy Rules. No further notice of the Motion is necessary.

B. This matter constitutes a "core proceeding" within the meaning of 28 U.S.C. § 157.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1

PHI 317483050v5

118523968_1

C. This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

D. On September 11, 2015 (the "Petition Date"), the Debtor commenced this voluntary case (the "Case") by the filing a petition for relief under chapter 11 of the Bankruptcy Code.

E. The Debtor continues in possession of its property and continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

F. As of the date hereof, the United States Trustee for the Eastern District of Pennsylvania (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (a "Creditors' Committee") in the Case pursuant to Section 1102 of the Bankruptcy Code.

G. The Debtor acknowledges and confirms as follows:

The Prepetition Secured Debt

1. At the request of the Debtor, the Philadelphia Authority for Industrial Development (the "Authority") issued its Revenue Bonds, Series of 2006 (Please Touch Museum Project) (the "Bonds") in the original aggregate principal amount of $60,000,000, pursuant to that Trust Indenture dated as of November 1, 2006 (the "Indenture") with U.S. Bank National Association as Trustee (U.S. Bank National Association, as Trustee under the Indenture and with regard to the Bonds, the "Indenture Trustee"). The Debtor approved the terms and conditions of the Indenture and is bound by the Indenture pursuant to Sections 3.1, 4.4, 4.5, and 5.12 (without limitation) of the Loan Agreement.

2

2. The Authority loaned the proceeds of the sale of the Bonds to the Debtor pursuant to that Loan Agreement dated as of November 1, 2006 (the "Loan Agreement"), which was assigned by the Authority to the Indenture Trustee pursuant to, without limitation, the Indenture (pages 1 and 2) and to the Loan Agreement (Section 4.5).

3. Such loan was evidenced by that $60,000,000 Promissory Note Series of 2006 (Philadelphia Authority for Industrial Development) relating to and securing the Bonds, dated November 8, 2006, by the Museum to the Authority, and irrevocably assigned by the Authority to the Trustee pursuant to an Assignment as well as pursuant to the Indenture (pages 1 and 2) and the Loan Agreement (Section 4.5) (the "Note"). Under the Note, the Debtor agreed to pay directly to the Trustee all payments of principal, premium and interest for the Note, which correlate to the payments due with respect to the Bonds, additional amounts due under the Indenture, and the "Additional Payments" required by the Loan Agreement, Section 4.2.

4. The Bonds were secured pursuant to, without limitation, the Indenture, the Loan Agreement, the Note and a Security Agreement (defined below) (the Bonds, Indenture, Loan Agreement, Note, Security Agreement, and all other documents related to the issuance of the Bonds are collectively referred to as the "Bond Documents").

    i. Under the Indenture, to provide for (a) payment of principal and interest on the Bonds, (b) the rights of the Bondholders, and (c) performance of the covenants contained in the Bonds and in the Indenture, the Authority sold, assigned, transferred, set over and pledged and granted a security

3

118523968_1

interest unto the Trustee, of all of the Authority's rights, title and interest in and to, without limitation, the following (collectively, the "<u>Trust Estate</u>") to have and to hold in trust for the benefit and security of the holders of the Bonds, subject to the terms and conditions of the Indenture:

1. the "<u>Pledged Revenues</u>," which include (i) all the moneys payable by the Debtor to the Authority under the Loan Agreement with respect to the Bonds (except the Authority's Reserved Rights), and (ii) all payments of the principal or redemption price of and interest on the Note delivered or to be delivered to the Indenture Trustee on behalf of the Authority by the Debtor as additional security for the Debtor's obligation to make payments on the Bonds pursuant to the Loan Agreement (Indenture, page 12);

2. the Note, and all amounts payable by the Debtor under the Note;

3. the Loan Agreement, and all amounts due under the Loan Agreement (except the Authority's Reserved Rights);

4. the Mortgage;[2]

5. the Security Agreement (defined below);

6. the "<u>Pledged Collateral</u>," which means, collectively collateral pledged under the Mortgage and the Security Agreement; and

7. all the funds established under the Indenture (except the Rebate Fund) and all earnings thereon.

---

[2] The "<u>Mortgage</u>" was that Open-End Mortgage and Security Agreement, made as of November 1, 2006, by the Debtor to the Trustee, pertaining to property at 200-212 North 21st Street, Philadelphia, PA. It is believed to have been released in accordance with its terms and the Loan Agreement. Nonetheless, the Trustee's rights are reserved in the event that any right, title or interest under the Mortgage continues to be held by the Trustee.

(Indenture, pages 1-2, Section 5.01 (as to Pledged Revenues).)

    ii. Under the Loan Agreement, Section 4.5(a), as security for the Debtor's obligation to make all payments due, and to perform all obligations, under the Loan Agreement, and for the benefit and security of the Note, the Debtor pledged and granted to the Indenture Trustee a security interest and first priority lien in (i) the Debtor's Gross Receipts and any rights to receive such Gross Receipts, and (ii) the Pledged Collateral. "<u>Gross Receipts</u>" means all realized receipts, revenues, payments, income and other moneys received by or on behalf of the Debtor from any source, in connection with the ownership or the operation of all or any part of the "<u>Facilities</u>" (as defined in the Indenture, which refers to Memorial Hall) or from income on investments, including, without limitation, all non-operating revenues, and all rights to receive the same whether in the form of Accounts Receivable (as defined in the Loan Agreement), contract rights, chattel paper, instruments, general intangibles of the Debtor and the proceeds thereof, the proceeds of any insurance coverages on and condemnation awards in respect of the Facilities or any gain on the sale or other disposition of property; all of the foregoing, whether now existing or hereafter coming into existence and whether now owned or held or hereafter acquired by the Debtor; and including all gifts, grants, bequests, donations and contributions, except those heretofore or hereafter made, designated at the time of making by the donor or maker as being for certain specified purposes inconsistent with the application thereof to the payments due from the Debtor under the Loan Agreement and except any

5

income derived therefrom to the extent required by such designation or restriction (Loan Agreement, page 4).

iii. Under the Loan Agreement, Section 4.5(b), to secure the payment of principal of, premium, if any, and interest on the Bonds, the Debtor agreed and consented to (a) the Authority's absolute and irrevocable assignment to the Indenture Trustee of (i) all right, title and interest of the Authority in and to all moneys and investments in all Funds and Accounts established under the Indenture except the Rebate Fund, and ii) all of the Authority's rights and remedies under the Note and under the Loan Agreement (excluding the Reserved Rights), and (b) the Authority's grant of a security interest to the Trustee, in all of the right, title and interest of the Authority in the Pledged Revenues. The Authority directed the Debtor to pay all assigned amounts directly to the Trustee.

iv. The Debtor made a Security Agreement to the Trustee, as of November 1, 2006 (the "Security Agreement"), granting a first priority security interest in and continuing lien upon the Debtor's furnishings, equipment and exhibits (except for those exhibits which have been accessioned, and those items not owned by the Debtor), and all cash and non-cash proceeds thereof, and all rights to payment and other rights accruing to the Debtor by reason of the Debtor's interest therein (all of the foregoing, the "Security Agreement Collateral").

5. By notice from the Indenture Trustee to the Debtor and the Authority dated June 6, 2014, due to significant Events of Default committed by the Debtor, the

118523968_1

principal of all the Bonds outstanding was declared to be due and payable immediately, together with interest accrued thereon. The Bonds were then outstanding in the principal amount of $58,000,000.00. In addition, all Loan Payments and Additional Payments due and owing under the Loan Agreement were declared immediately due and payable. Demand was made for the immediate payment of all such amounts, and all other sums due and owing with respect to the Bonds or under the Bond Documents.

6. Pursuant to the Bond Documents, the Indenture Trustee holds perfected, valid, enforceable and non-avoidable first-priority liens on and security interests (the "Pre-Petition Liens") in, among other collateral, the Pledged Collateral and the Gross Receipts. The Museum's obligations under and in respect of the Bond Documents are referred to as the "Pre-Petition Obligations."

7. The Pre-Petition Liens of the Indenture Trustee are (i) valid, binding, perfected, enforceable liens and, subject to section 552 of the Bankruptcy Code, include all post-petition proceeds, products, offspring, rents and profits thereof, (ii) not subject to avoidance, re-characterization, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable non-bankruptcy law, and (iii) subject and subordinate only to (A) the Replacement Liens (as defined below), and (B) the Carve-Out (as defined below and to which the Replacement Liens are subject). The Bond Documents are valid and binding agreements and obligations of the Debtor.

8. The Pre-Petition Obligations constitute legal, valid, and binding obligations of the Debtor, enforceable in accordance with their terms and no

7

objection, offset, defense, or counterclaim of any kind or nature to the Pre-Petition Obligations exists. The Pre-Petition Obligations, and any amounts previously paid to the Indenture Trustee on account thereof or with respect thereto, are not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

9. The Indenture Trustee perfected its security interests by, among other methods, the filing of UCC-1 financing statements, and other required documents against the Debtor and such collateral with the proper federal, state, and county offices for the perfection of such security interests.

H. As of September 1, 2015, the amounts due on the Bonds Outstanding include the unpaid principal amount of $58,000,000 and accrued and unpaid interest of $2,987,662.50, which interest continued to accrue through the Petition Date. The amounts set forth above do not include Additional Payments, Administration Expenses (both as defined in the Loan Agreement), and other fees, charges, and amounts owing by the Museum to the Indenture Trustee under the Bond Documents. This Interim Order does not in any way impair or limit the Indenture Trustee's right to file one or more proofs of claim, nor does it limit in any way the claim itself.

I. The Debtor further admits that all right, title, and interest in all moneys and investments held in all funds and accounts established under the Indenture and held by the Indenture Trustee (except the Rebate Fund), were absolutely and irrevocably assigned by the Authority to the Indenture Trustee; that the Debtor agreed and consented to such absolute and irrevocable assignment; that such moneys and investments are held by the Indenture Trustee to secure the payment of the Bonds and pursuant to an express trust for the benefit of the holders of the Bonds, subject to the terms and conditions of the Indenture; and that the Indenture Trustee

8

118523968_1

has the unlimited right to use such moneys and investments in such funds and accounts held by the Indenture Trustee in any manner and at any time appropriate under the Bond Documents.

The Debtor's Need to Use Cash Collateral

J.    The Debtor operates a children's museum known as the Please Touch Museum located at Memorial Hall in the Fairmount Park section of Philadelphia. The Debtor generates its revenues through a combination of sales of memberships and tickets to the Museum, event revenue, endowment income, and charitable contributions.

K.    Pursuant to sections 363(a) and 552(b) of the Bankruptcy Code, the accounts receivable and Gross Receipts held by the Debtor as of the Petition Date (without limitation to other cash collateral held by the Debtor as of the Petition Date) constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code. The Indenture Trustee holds an interest in the cash collateral within the meaning of sections 363(c)(2) and 363(e) of the Bankruptcy Code.

L.    The Debtor has an immediate need to use cash collateral on an interim basis through the date of expiration of this interim cash collateral order (the "Interim Order") to, among other things, fund its payroll obligations and pay other operating expenses, in accordance with the Budget attached hereto as **Exhibit 1**.

M.    Good cause has been shown for entry of this Interim Order, as an immediate and critical need exists for the Debtor to be permitted access to funds to continue to operate the Museum.

N.    Absent the ability to use cash collateral, the Debtor will not be able to pay insurance, wages, rent, utility charges, and other critical operating expenses (all as reflected in

118523968_1

the Budget). Consequently, without access to cash collateral, the Debtor will not be able to maintain its business operations and continue its restructuring efforts.

O. The record adequately demonstrates that without the use of such funds, the Debtor's estate would be immediately and irreparably harmed.

P. The Debtor seeks to use cash collateral existing on or after the Petition Date that is subject to the Indenture Trustee's liens – specifically, the Operating Account and the Museum Fund – for the purposes and in the amounts set forth in the Budget.

Q. Subject to compliance with the terms of this Interim Order, the Debtor is authorized to use the cash collateral during the period and in the amounts set forth herein.

R. All conclusions of law that are or may be deemed to be findings of fact are hereby incorporated as findings of fact.

S. This Interim Order is entered pursuant to, and shall be construed and be consistent with sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

ACCORDINGLY, THE COURT HEREBY CONCLUDES THAT:

1. Good cause has been shown for the entry of this Interim Order and the authorizations herein. Among other things, the entry of this Interim Order pending a final hearing (the "Final Hearing") will enable the Debtor to continue operating, avoid immediate and irreparable harm to the Debtor's estate, and otherwise is in the best interests of the Debtor and its creditors.

2. This Interim Order is immediately valid and fully effective upon its entry.

3. All findings of fact that are or may be deemed to be conclusions of law are incorporated herein as conclusions of law.

ACCORDINGLY, IT IS ORDERED THAT:

4. Pending expiration of this Interim Order, the Debtor is permitted to use cash collateral, in accordance with the Budget, for, among other things, working capital purposes, the payment of certain obligations in accordance with relief authorized by the Court and other obligations as set forth in the Budget. The Budget may be updated and modified through the date of the Final Hearing by: (i) consensual agreement between the Debtor and the Indenture Trustee or (ii) by further order of the Court.

5. The Debtor shall be, and hereby is, authorized to use cash collateral on the terms and conditions set forth in this Interim Order in accordance with the Budget; provided, however, that the Debtor may exceed any line item in the Budget by up to ten percent (10%) in any week, so long as the aggregate amount of the variance from the Budget for any week on a rolling net basis is not exceeded by more than ten percent (10%).

6. The Debtor's right to use cash collateral under the Interim Order shall commence on the date of entry of the Interim Order and expire on the earlier of: (a) the entry of a subsequent interim cash collateral order, or (b) the entry of a Final Order.

7. As partial adequate protection: (i) to protect the Indenture Trustee's interest in the cash collateral pursuant to sections 361 and 363(e) of the Bankruptcy Code, (ii) for any diminution in value from the use of the collateral, and (iii) for the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Court hereby grants the Indenture Trustee replacement security interests in and replacement liens (exclusive of any avoidance actions available to the Debtor's estates pursuant to sections 544, 545, 547, 548, 549, 550, 553(b) or 724(a) of the Bankruptcy Code or any proceeds thereof) on all of the Debtor's post-petition accounts receivable and Gross Receipts.

118523968_1

8. Such replacement liens (the "Replacement Liens") shall be equal to the aggregate diminution in value, if any, after the Petition Date of the pre-petition cash collateral. The Replacement Liens shall be of the same validity and priority as the liens of the Indenture Trustee on the pre-petition collateral.

9. Subject to the foregoing paragraph, the Replacement Liens shall constitute valid and duly perfected security interests and liens as of the Petition Date. The Indenture Trustee shall not be required to file or serve financing statements, notices of lien or similar interests which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such Replacement Liens and Supplemental Liens.

10. The Replacement Liens shall be subject and subordinate to fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and the Clerk of the Bankruptcy Court (collectively, the "Carve Out").

11. As additional partial adequate protection of the interests of the Indenture Trustee, in accordance with sections 361 and 363 of the Bankruptcy Code, and in consideration of the Debtor's use of cash collateral, the Indenture Trustee is hereby granted authority to use the funds and accounts held by the Indenture Trustee under the Indenture (except the Rebate Fund), and the monies and investments in such funds and accounts, to the extent provided in the Indenture and any other applicable Bond Documents and applicable law, and the stay imposed by Section 362(a) of the Bankruptcy Code, to the extent, if any, it may be applicable, is hereby lifted to the extent necessary to allow the Indenture Trustee to exercise its rights in and to said funds and accounts, and the monies and investments therein.

118523968_1

12. The Debtor is directed to keep its books and records of original entry current and updated, so that all business activity is posted to them in the ordinary course of the Debtor's business. The Debtor shall provide to the Indenture Trustee the reports of operations required to be provided by the respective prepetition agreements at the same time and in the same manner as set forth therein, but in any event, the Debtor shall provide the Indenture Trustee with weekly income statements, cash receipts statements, and other financial reports compared against the Debtor's weekly Budget, as well as copies of the Debtor's monthly operating reports.

13. <u>Rights Reserved</u>. Except as expressly stated in this Order, (a) the Debtor, the Indenture Trustee, and the bondholders have reserved all of their rights, claims and remedies, and (b) this is an interim order only and is without prejudice to any of the parties' ultimate substantive or procedural rights, none of which shall be waived or impaired by implication.

14. The Debtor shall promptly serve by first-class United States mail a copy of this Interim Order upon the Core Group and the 2002 List, each as defined in the *Order Establishing Certain Notice, Case Management, and Administrative Procedures* (the "<u>Case Management Order</u>") [Docket No. 48].

15. The Final Hearing to consider the entry of a Final Order authorizing and approving use of Cash Collateral and providing adequate protection is hereby scheduled for **November 18, 2015,** at 1:00 p.m.

16. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file a written objection upon the following parties: (a) counsel for the Debtor, Dilworth Paxson LLP, Attn: Lawrence G. McMichael, (b) the Office of the United States Trustee for the Eastern District of Pennsylvania, (c) counsel for the Indenture Trustee, and (d) the 2002 List. All objections to the entry of such Final Order shall be filed with the Clerk of the United States

118523968_1

Bankruptcy Court, Eastern District of Pennsylvania, in each case to allow actual receipt by the foregoing notice parties no later than **November 13, 2015**, at 4:00 p.m. prevailing Eastern Time (the "Objection Deadline").

17. This Interim Order shall be fully effective upon its entry.

October 15, 2015

Jean K. FitzSimon
United States Bankruptcy Judge

118523968_1

**Exhibit 1 (to Order)**

[Budget]

118523968_1

**Please Touch Museum**
**Cash Collateral Budget**

| Week - Ending | 0 Projected 9/13/2015 | 1 Projected 9/20/2015 | 2 Projected 9/27/2015 | 3 Projected 10/4/2015 | 4 Projected 10/11/2015 | 5 Projected 10/18/2015 | 6 Projected 10/25/2015 | 7 Projected 11/1/2015 | 8 Projected 11/8/2015 | 9 Projected 11/15/2015 | 10 Projected 11/22/2015 | 11 Projected 11/29/2015 | 12 Projected 12/6/2015 | 13 Projected 12/13/2015 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | $2,560,569 | $2,603,387 | $2,464,353 | $2,741,919 | $2,483,606 | $3,035,140 | $2,802,047 | $2,697,887 | $2,574,129 | $2,641,664 | $2,682,562 | $2,401,330 | $2,195,036 | $2,209,904 | $2,560,569 |
| **Cash Receipts** | | | | | | | | | | | | | | | |
| Admissions | 31,856 | 47,240 | 47,480 | 47,720 | 47,960 | 48,200 | 48,200 | 48,200 | 49,800 | 49,800 | 49,800 | 86,150 | 51,800 | 52,800 | 707,006 |
| Contributions and Grants | - | - | 25,000 | - | - | - | - | 15,000 | - | - | - | 3,000 | - | - | 43,000 |
| Foundation for the Future Campaign | - | 15,000 | 215,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 395,000 |
| Collection of A/R-Prepetition | - | - | 19,000 | - | 497,201 | - | - | - | - | 213,958 | - | - | - | - | 730,160 |
| Collection of A/R-Postpetition | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| External Services | - | - | 4,000 | - | - | - | - | 4,000 | - | - | - | 4,000 | - | - | 16,000 |
| Event Deposit Release | 500 | 2,875 | - | 3,500 | 2,725 | 3,500 | - | 5,175 | 3,500 | 3,000 | 7,300 | 4,400 | 2,925 | 5,975 | 45,375 |
| Fees for Special Events | 3,100 | 6,700 | 5,925 | 8,100 | 1,900 | 3,500 | 9,100 | 29,400 | 9,800 | 6,900 | 5,425 | 5,675 | 4,500 | 4,500 | 104,525 |
| Memberships | 2,173 | 8,400 | 7,800 | 7,200 | 6,600 | 6,000 | 6,000 | 6,000 | 10,000 | 10,000 | 10,000 | 15,000 | 15,000 | 17,500 | 127,673 |
| Museum Store Receipts | 5,190 | 7,045 | 7,086 | 7,126 | 7,167 | 7,208 | 7,208 | 7,208 | 7,480 | 7,480 | 7,480 | 12,920 | 7,820 | 7,990 | 106,408 |
| Catering Commission | - | - | - | - | - | - | - | 19,000 | - | - | - | 19,000 | - | - | 38,000 |
| **Total Receipts** | 42,818 | 87,260 | 331,291 | 88,646 | 578,554 | 83,408 | 85,508 | 148,983 | 95,580 | 306,138 | 95,005 | 165,145 | 101,045 | 103,765 | 2,313,146 |
| **Cash Disbursements** | | | | | | | | | | | | | | | |
| Net Payroll | - | 91,424 | - | 91,424 | - | 91,424 | - | 91,424 | - | 91,424 | - | 91,424 | - | 91,424 | 639,970 |
| Withheld/Payroll Taxes & Benefits | - | 80,421 | 4,700 | 50,283 | 80,931 | 80,931 | 4,700 | 50,283 | - | 80,421 | 6,025 | 50,283 | - | 80,283 | 488,333 |
| Sales tax | - | 4,017 | - | - | - | - | 3,391 | - | - | - | 2,661 | - | - | - | 10,069 |
| Travel | - | 1,000 | - | 1,000 | - | 1,000 | - | 1,000 | - | 1,000 | - | - | - | 1,000 | 4,000 |
| Programs & Exhibits | - | 5,400 | 2,600 | 4,481 | 3,600 | 39,600 | 8,350 | 4,481 | 3,600 | 10,100 | 7,400 | 3,600 | 4,480 | 3,600 | 101,292 |
| Cap-X | - | - | - | 19,200 | - | - | 150,000 | 10,000 | - | - | - | - | 10,000 | - | 339,200 |
| Insurance | - | 340 | - | 101,705 | - | 14,742 | - | - | - | 14,742 | - | 150,000 | - | - | 131,528 |
| Auto | - | - | - | - | - | 2,850 | - | - | - | 2,850 | - | - | - | - | 6,050 |
| Cleaning | - | 29,668 | - | - | - | 34,233 | - | - | - | 34,233 | - | - | - | - | 98,134 |
| Maintenance Contracts | - | 425 | 1,084 | 350 | 425 | 425 | 425 | 1,084 | 350 | 425 | 425 | 1,084 | 10,750 | 425 | 22,427 |
| Maintenance | - | 3,025 | 8,742 | 5,296 | 8,000 | 2,800 | 5,731 | 10,373 | 5,000 | 2,800 | 5,731 | 9,652 | 5,721 | 4,931 | 85,514 |
| Advertising | - | - | 7,500 | 7,500 | 7,500 | 4,931 | 7,500 | 7,500 | 7,500 | 8,381 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Credit Card/Merchant Fees | - | - | 100 | 8,000 | - | 7,500 | 100 | 8,000 | - | 7,500 | 100 | - | 10,000 | - | 26,300 |
| Copier Lease | - | - | - | - | 2,267 | - | - | - | - | 2,267 | - | 100 | - | - | 4,534 |
| Payroll Service | - | - | 2,475 | - | 875 | - | 875 | - | 875 | - | 875 | - | 875 | - | 10,050 |
| Security | - | - | - | 22,000 | - | - | - | 22,000 | - | - | - | 22,000 | - | - | 66,000 |
| Office / Admin | - | 2,120 | 2,448 | 2,120 | 1,120 | 2,470 | 3,020 | 2,120 | 1,120 | 2,470 | 2,620 | 2,620 | 2,251 | 2,120 | 28,619 |
| Outside Consultants | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Event Support Consultant | - | - | 3,750 | - | - | - | - | 3,750 | - | - | - | 3,750 | - | - | 11,250 |
| IT Consultant | - | - | 1,250 | - | - | - | - | 1,250 | - | - | - | 1,250 | - | - | 3,750 |
| Fundraising Support Consultant | - | - | 12,500 | - | - | - | - | 12,500 | - | - | - | 12,500 | - | - | 37,500 |
| PR Consultant | - | - | - | - | - | - | - | 5,000 | - | - | - | 5,000 | - | - | 10,000 |
| Catering Consultant | - | - | - | - | - | - | - | 5,000 | - | - | - | - | - | - | 5,000 |
| Store | - | 2,750 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 10,000 | 5,500 | 5,500 | 5,500 | 73,250 |
| Utilities | - | 5,352 | 1,076 | 29,100 | - | 5,352 | 76 | 26,000 | 4,100 | 1,552 | 3,800 | 29,100 | 29,100 | - | 109,084 |
| **Total Disbursements** | - | 226,294 | 53,725 | 346,959 | 27,020 | 295,600 | 189,668 | 267,866 | 28,045 | 265,240 | 47,037 | 371,440 | 86,177 | 196,784 | 2,401,855 |
| **Operating Cash Flow** | 42,818 | (139,034) | 277,566 | (258,313) | 551,534 | (212,192) | (104,160) | (118,883) | 67,535 | 40,898 | 47,968 | (206,295) | 14,868 | (93,019) | (88,709) |

**Please Touch Museum**
**Cash Collateral Budget**

| Week - Ending | 0 Projected 9/13/2015 | 1 Projected 9/20/2015 | 2 Projected 9/27/2015 | 3 Projected 10/4/2015 | 4 Projected 10/11/2015 | 5 Projected 10/18/2015 | 6 Projected 10/25/2015 | 7 Projected 11/1/2015 | 8 Projected 11/8/2015 | 9 Projected 11/15/2015 | 10 Projected 11/22/2015 | 11 Projected 11/29/2015 | 12 Projected 12/6/2015 | 13 Projected 12/13/2015 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Restructuring Expenses** | | | | | | | | | | | | | | | |
| Dilworth Paxson, LLP | - | - | - | - | - | - | - | - | - | - | 185,000 | - | - | - | 185,000 |
| EisnerAmper, LLP | - | - | - | - | - | - | - | - | - | - | 100,750 | - | - | - | 100,750 |
| Rust/Omni | - | - | - | - | - | 20,900 | - | - | - | - | 4,450 | - | - | - | 25,350 |
| Isdaner & Co., LLC | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Committee Counsel | - | - | - | - | - | - | - | - | - | - | 26,000 | - | - | - | 26,000 |
| Committee Financial Advisor | - | - | - | - | - | - | - | - | - | - | 13,000 | - | - | - | 13,000 |
| US Trustee Fees | - | - | - | - | - | - | - | 4,875 | - | - | - | - | - | - | 4,875 |
| **Total Restructuring Expenses** | - | - | - | - | - | 20,900 | - | 4,875 | - | - | 329,200 | - | - | - | 354,975 |
| Cash Flow After Restructuring Exp. | 42,818 | (139,034) | 277,566 | (258,313) | 551,534 | (233,092) | (104,160) | (123,758) | 67,535 | 40,898 | (281,232) | (206,295) | 14,868 | (93,019) | (443,684) |
| Ending Cash Balance | $2,603,387 | $2,464,353 | $2,741,919 | $2,483,606 | $3,035,140 | $2,802,047 | $2,697,887 | $2,574,129 | $2,641,664 | $2,682,562 | $2,401,330 | $2,195,036 | $2,209,904 | $2,116,885 | $2,116,885 |